*In re* MARRIAGE OF MELANIE McGLOTHLIN, Petitioner-Appellee, and DOUGLAS R. McGLOTHLIN, Respondent-Appellant.

Second District   No. 2—99—0064

━━━━━━━━

Opinion filed April 7, 2000.—Rehearing denied June 1, 2000.

Martin A.A. Diestler, of Wheaton, for appellant.

Michael A. Benedetto, of Oak Brook, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Douglas R. McGlothlin (Douglas), appeals from the trial court's order denying his petition under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1996)) to vacate judgment. We reverse and remand.

Melanie McGlothlin (Melanie) filed suit for dissolution of marriage against Douglas on November 19, 1996. Eventually, the matter was set for a pretrial conference on March 18, 1998, with a trial date of March 27. Also set at that time was Douglas's deposition, to be taken March 11.

On March 10, Douglas informed his attorney that he had accepted a trucking job that would require him to take an approximately 12-day trip to Honduras. However, due to delays in crossing various national borders and finding a return flight home, Douglas did not return until April 4. During that period, the pretrial conference was held and Douglas's deposition was rescheduled to March 24. On March 27, Douglas's attorney, William Rath, requested a continuance without clearly informing the court of the reasons for Douglas's failure to appear. The motion was denied. Rath was similarly unsuccessful in his attempt to bifurcate the hearing. The court defaulted Douglas and proceeded to trial on grounds for both dissolution and division of property. Judgment was entered on April 3.

Douglas learned of the judgment upon his return from Honduras and on April 22 filed a motion to vacate. The court denied the motion. Douglas then changed attorneys and, after examining a transcript of the March 27 trial, filed a petition pursuant to section 2—1401 of the Code of Civil Procedure on August 4, alleging that Melanie had misrepresented facts to the court, that the court had not been made aware of the reason for his absence, and that the court had not considered the terms of a marital settlement agreement entered into by Douglas and Melanie. A hearing was held on the petition on December 17, 1998, during which both Douglas and Melanie testified. The court denied the petition. This appeal followed.

■ Douglas contends that the trial court erred in denying his section 2—1401 petition. Section 2—1401 provides a comprehensive statutory procedure by which final orders and judgments may be vacated more than 30 days after their entry. *In re Marriage of Lindjord*, 234 Ill. App. 3d 319, 325 (1992). The purpose of a section 2—1401 petition is to bring before the court matters of fact not known at the time of judgment and that, if known, would have altered or affected the judgment. *Lindjord*, 234 Ill. App. 3d at 325. To be entitled to relief under section 2—1401, a petitioner must set forth specific allegations supporting (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition. *Lindjord*, 234 Ill. App. 3d at 325. A section 2—1401 motion is addressed to the trial court's discretion, and its denial will be reversed only upon an abuse of that discretion. See *White v. Ratcliffe*, 285 Ill. App. 3d 758, 763 (1996).

Douglas argues that the trial court should have granted his section 2—1401 petition because the court erred in failing to incorporate into its final judgment the marriage settlement agreement entered into by Douglas and Melanie. On January 13, 1998, Douglas and Melanie signed a settlement agreement regarding, among other things, the division of property in the event that their marriage was dissolved. According to the agreement, it was the understanding of the parties that the agreement was to be incorporated into the anticipated "Judgment for Dissolution of Marriage and be attached thereto and merged thereon and shall thereafter be binding and conclusive upon the parties." The agreement further stated:

> "In the event that either Melanie or Douglas *at any time* hereafter obtains a Dissolution of Marriage in the cause presently pending between them, this agreement and all of its provisions shall be incorporated into any such Judgment or decree for Dissolution of Marriage, either directly or by reference, but in no event shall this

agreement be effective or of any validity unless a Judgment or decree for Dissolution of Marriage is entered in the pending case brought by Melanie and referred to hereinabove. The Court on entry of the judgment or decree for Dissolution of Marriage shall retain the right to enforce the provision and terms of this agreement which agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, advisees and grantees of the parties hereto." (Emphasis added.)

This agreement was never presented to the court during the March 27 trial. During her testimony, Melanie referred to an "agreed order" with Douglas and an "understanding that we had a marital settlement." Her attorney referred to "an alleged agreement that they had made between them on a pre- [sic] on the marital agreement basis." Because Douglas failed to appear for trial or for his deposition, the court precluded Douglas's attorney, William Rath, from cross-examining Melanie. Given the opportunity to speak in closing argument, Rath did not mention the agreement, arguing only the inequity of giving all the assets to Melanie and all the debts to Douglas and that the assets and debts should be split evenly between the two parties.

The agreement also was not brought up in Douglas's motion to vacate. However, it was raised in the section 2—1401 motion. During the hearing on the section 2—1401 petition, Melanie testified that her intent, when she signed the agreement, was that the agreement was only valid if the case went to prove-up on February 17, 1998. On that date the case was set for trial because Douglas did not agree to proceed to prove-up. Melanie's understanding was that the agreement was "null and void" because the prove-up was not held. Douglas testified at the hearing on the petition that he understood that "there would be no way that either one of us could back out of the Agreement" and that no one had rescinded the agreement or taken any action to invalidate it. The trial court found that the agreement "was predicated and based upon the fact that a prove-up and uncontested divorce would go forward on February 17th, 1998," and that "the parties recognized that the Agreement was no longer in effect and that this matter would be tried as a contested divorce."

■ We conclude that the trial court abused its discretion in denying Douglas's section 2—1401 petition. The court's finding that the settlement agreement was predicated upon the prove-up proceeding on February 17 is against the manifest weight of the evidence. The agreement states that the provisions of the agreement are to be incorporated into the decree for dissolution of marriage if either Melanie or Douglas "*at any time*" (emphasis added) obtains such a judg-

ment. The agreement never states that its validity was contingent upon prove-up on February 17 or any other specific date, and finding that the agreement was so contingent was baseless. The language of the agreement is unambiguous and does not support Melanie's "understanding" of it or the court's conclusions regarding it.

Furthermore, the failure to present the agreement to the court was tantamount to fraud on Melanie's part. Melanie knew of the existence of this signed document and what the document stated. Her failure to present the agreement and her disparagement of it as "alleged" appear unethical. We also find attorney Rath's failures to address the issue at trial or in the original motion to vacate to be enigmatic. The parties were, at minimum, derelict in presenting evidence to the court, and the court was manifestly in error in dealing with the evidence when it finally came to light.

Douglas clearly had a meritorious claim regarding the settlement agreement. Melanie argues that Douglas was not diligent in presenting this claim to the court, as it was not raised in the original motion to vacate and was only raised five months after trial in the section 2—1401 petition. However, even in the absence of due diligence, a default judgment can be vacated if equity, justice, and good conscience so require. *Halle v. Robertson*, 219 Ill. App. 3d 564, 569 (1991). Indeed, a section 2—1401 petition should be used to prevent the enforcement of an unjust or unfair judgment. *Halle*, 219 Ill. App. 3d at 569. Equity here requires that the trial court's judgment, based as it was on misleading testimony and the unseemly suppression of evidence, be vacated and the cause be remanded for the entry of judgment in accordance with the settlement agreement reached by the parties on January 14, 1998.

Because of our disposition of this issue, we need not address Douglas's other contentions.

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for the entry of judgment consistent with this opinion.

Reversed and remanded.

RAPP and GALASSO, JJ., concur.